# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| VANN BYRD, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Civil Action Number |
| NANCY A. BERRYHILL, Acting ) | 3:17-cv-00191-AKK |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Vann Byrd brings this action pursuant to Section 405(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). The court finds that the Administrative Law Judge's ("ALJ") and the Appeals Council's decisions—which have become the decision of the Commissioner—are supported by substantial evidence. Therefore, the court affirms the decision denying benefits.[1]

**I. PROCEDURAL HISTORY**

Byrd filed an application for a period of disability, disability insurance benefits, and supplemental security income. R. 16, 36, 372, 379, 577. After the SSA denied his application, Byrd requested a hearing before an ALJ, who

---

[1] Byrd's motion for extension of time, doc. 9, is **DENIED** as moot.

1

subsequently denied Byrd's claim. R. 13-28, 111-12. This became the final decision of the Commissioner when the Appeals Council refused to grant review. R. 1-4. Byrd then filed this action pursuant to § 405(g) of the Act, 42 U.S.C. § 405(g). Doc. 1.

## II. STANDARD OF REVIEW

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529

(quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)  whether the claimant is currently unemployed;

(2)  whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

### IV. THE COMMISSIONER'S DECISION

In performing the five step analysis, the ALJ found that Byrd had not engaged in substantial gainful activity since July 14, 2014, and therefore met Step One. R. 18. Next, the ALJ found that Byrd satisfied Step Two because he suffered from the severe impairments of obesity, diabetes mellitus type II, generalized arthritis, sleep apnea, and cervical disc disease. R. 18. The ALJ then proceeded to the next step and found that Byrd did not satisfy Step Three because his impairments did not meet or equal any listing. R. 20. Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, she proceeded to Step Four, where she determined that Byrd has the residual

functional capacity ("RFC") to perform light work, with the limitations that he can lift and carry twenty pounds occasionally and ten pounds frequently; can stand or walk for three hours and sit for six hours during an eight-hour workday with normal breaks; can occasionally stoop, balance, crouch, and climb ramps and stairs; and can never kneel, crawl, or climb ladders, ropes, or scaffolds. R. 21. In light of Byrd's RFC, the ALJ determined that Byrd was not able to perform any of his past relevant work. R. 26. Lastly, in Step 5, the ALJ considered Byrd's age, education, work experience, and RFC, and determined that there are jobs that exist in significant numbers in the national economy that Byrd can perform. R. 27. Therefore, the ALJ found that Byrd was not disabled under the Act. R. 27.

V. ANALYSIS

Byrd contends that the ALJ erred in evaluating his RFC by failing to properly consider (1) his subjective complaints of disabling neck, back, leg, and hand pain or (2) the opinion evidence of his treating physician, Dr. Don Heinkel. Doc. 10 at 4-13. The court addresses each argument in turn.

**A. Byrd's Pain Complaints**

Byrd contends that the ALJ made two separate errors in evaluating the credibility of Byrd's complaints of pain. First, Byrd contends that the ALJ failed to consider Byrd's longitudinal treatment history in accordance with the then-

applicable Social Security Ruling 96-7p. Doc. 10 at 6. Second, Byrd contends that the ALJ mischaracterized the evidence. *Id.* at 10.

To demonstrate that pain or another subjective symptom renders him disabled, Byrd must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). If an ALJ discredits subjective testimony of pain, "he must articulate explicit and adequate reasons." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986)); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).

The ALJ properly applied these legal principles. He found that Byrd's medically determinable impairments could reasonably have been expected to produce the symptoms alleged, but that Byrd's statements concerning the intensity, persistence, and limiting effects of his symptoms were not consistent with the medical record. R. 22-24. That conclusion was in accordance with applicable law. *See Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("*After* considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that

determination will be reviewed for substantial evidence.") (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)) (emphasis added).

The ALJ also adequately articulated reasons to support his findings. The ALJ noted a number of medical records which conflicted with Byrd's testimony as to his symptoms. After a February 2013 motor vehicle accident, Byrd had a CT of the cervical spine which showed only moderate degenerative changes of the spine with no evidence of fracture. R. 22 (citing R. 750). Contemporaneous x-rays revealed degenerative arthritic changes, but were otherwise unremarkable. R. 22 (citing R. 751). In July 2013, MRIs of the cervical and lumbar spine revealed a mild bulge of the annulus at C3-4, but were otherwise unremarkable. R. 22 (citing R. 756). Based on these MRIs, Dr. Kenneth McCullough provided Byrd with conservative treatment in the form of medication and outpatient physical therapy. R. 22 (citing R. 758-60). By September 2013, MRIs of the cervical and lumbar spine were normal, and neurovascular examination was grossly normal in the upper and lower extremities. R. 22 (citing R. 782). A March 2014 x-ray of the lumbar spine revealed no acute abnormality, and a June 2014 x-ray of the cervical spine was unremarkable with only mild arthritic changes. R. 23.

After the June 2014 x-ray, Byrd visited the neurologist Dr. John Kast for evaluation. R. 23 (citing R. 829-31). Dr. Kast took limited x-rays of the cervical spine, which did not show obvious fractures or dislocations, and an MRI of the

7

cervical spine, which revealed multilevel cervical degenerative disease with concentric bulging annulus at C5-6 consistent with a mild degree of central canal stenosis and concentric bulging annulus at C2-3 producing mild central canal stenosis. R. 23 (citing R. 830-32, 839). Byrd required no further treatment from Dr. Kast. R. 23 (citing R. 830).

In August 2014, Dr. Deepak Sree, a rheumatologist, evaluated Byrd for a rheumatological disorder. R. 23 (citing R. 926-929). Examinations diffuse tenderness to palpation and multiple trigger points, but no cyanosis, clubbing, edema, synovitis, joint effusion, or rash. R. 23 (citing R. 929). Dr. Sree determined that Byrd did not have an underlying autoimmune rheumatologic condition, and provided treatment consisting solely of medication. R. 23 (citing R. 929).

After reviewing the medical evidence, the ALJ concluded that this evidence did not substantiate Byrd's allegations as to the severity of the functional limits imposed by his impairments. R. 23. In addition, the ALJ noted that there was evidence of malingering, as medical records reported that Byrd put forth questionable effort on multiple occasions while receiving treatment at Tennessee Valley Pain Consultants. R. 23 (citing R. 849, 851, 960). Additionally, the ALJ noted that conservative treatment with medication had a positive effect on Byrd, and allowed him to perform activities of daily living with much less difficulty. R. 23-24 (citing R. 958).

**1. Byrd's Longitudinal History**

Social Security Ruling 96-7p, which was in effect at the time of the ALJ's decision, provides that

> In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.

Soc. Sec. Ruling 96-7p Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7p (S.S.A. July 2, 1996) *superseded by* Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p (S.S.A. Oct. 25, 2017). While Byrd contends that the ALJ failed to properly consider his longitudinal treatment history, it is clear that the ALJ considered Byrd's longitudinal history, but determined that Byrd's testimony was not fully credible. *Compare* R. 21-24 *with* doc. 10 at 6-10.

**2. The ALJ's Characterization of the Evidence**

Byrd's contention that the ALJ mischaracterized medical evidence is similarly unavailing. An ALJ must follow certain guidelines when considering evidence related to the limiting effects of a claimant's pain. "In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and

laboratory findings and statements about how your symptoms affect you." 20 C.F.R. §§ 404.1529(a), 416.929(a). Objective medical evidence is useful and plays a role in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). An ALJ can be found to have mischaracterized medical evidence when he fails to mention any parts of the medical evidence that are material to the case. *See Maffia v. Comm'r of Soc. Sec.*, 291 F. App'x. 261, 264 (11th Cir. 2008); *Hoffman v. Astrue*, 259 F. App'x. 213, 217 (11th Cir. 2007). "The ALJ cannot pick and choose among a doctor's records to support his own conclusion." *Chambers v. Astrue*, 671 F. Supp. 2d 1253, 1258 (N.D. Ala. 2009) (holding that ALJ erred in discrediting the claimant's allegation of radiculopathy on the basis of doctor's finding of "intact proprioception in the fingers," where that finding was contradicted by a more recent finding made by the same doctor).

Byrd points to physical examinations documenting diffuse pain, multiple trigger points, and severely reduced range of motion as evidence the ALJ failed to properly consider. Doc. 10 at 4 (citing R. 703, 779, 812, 830, 973, 1023). However, the ALJ considered numerous records that contained such showings. R. 23. The fact that the ALJ's conclusion as to the extent to which these records supported Byrd's pain testimony differed from Byrd's own opinion does not mean the ALJ mischaracterized the evidence. *See Summerford v. Berryhill*, No. 2:16-CV-1607-VEH, 2017 WL 5188241, at *5 (N.D. Ala. Nov. 9, 2017) (ALJ did not

mischaracterize evidence where the ALJ properly considered the records plaintiff relied on, but came to different conclusion). Similarly, Byrd contends that the ALJ failed to mention Byrd's reports that medication was of limited use at doctor visits. Doc. 10 at 11 (citing R. 779, 958, 1021, 1030). However, Byrd's statements are not objective medical evidence, and none of the referenced records contain findings by a doctor that Byrd's medication was insufficient or should be increased. R. 958, 1021, 1030. There was no reason for the ALJ to address this subjective evidence in the portion of his opinion performing the analysis of the objective medical evidence required to meet the second step of the three-part pain standard. *See Kiley v. Colvin*, No. 2:15-CV-00687-RDP, 2016 WL 3439862, at \*7 (N.D. Ala. June 23, 2016) (Omitting plaintiff's subjective reports during doctor visits from analysis of objective medical evidence in assessing credibility of pain claim is not mischaracterization of evidence).

Accordingly, the ALJ properly applied legal standards in determining not to fully credit Byrd's testimony, and this decision was supported by substantial evidence.

**B. Dr. Heinkel's Testimony**

Byrd next contends that the ALJ erred by giving little weight to the opinion testimony of Dr. Heinkel, Byrd's treating physician, and giving substantial weight to the opinion of Dr. Stuart Stephenson, the state agency consultant. Doc. 10 at 11-

13. "In evaluating medical opinions, the ALJ considers many factors, including the examining relationship, the treatment relationship, whether the opinion is amply supported, [and] whether the opinion is consistent with the record and the doctor's specialization." *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 407 (11th Cir. 2010) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)). "It is well-established that the testimony of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (internal quotation marks omitted). "[G]ood cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (internal quotation marks omitted); *see Perez v. Comm'r of Soc. Sec.*, 625 F. App'x 408, 417 (11th Cir. 2015).

The ALJ clearly articulated that he gave Dr. Heinkel's opinion little weight because it lacked support in the record. R. 25-26. The ALJ found Dr. Heinkel's testimony that Byrd required the use of a cane to be inconsistent with the fact that Byrd's recent medical records made no mention of use of a cane, specifically stated that Byrd denied any gait abnormalities, and that multiple physical examinations had confirmed the absence of any gait abnormality. R. 26. Likewise,

the ALJ found Dr. Heinkel's opinion that Byrd was most likely suffering from peripheral neuropathy with imbalance to be inconsistent with both records stating that Byrd was neurologically intact and the absence of any mention of peripheral neuropathy in the record. R. 26. Finally, the ALJ gave little consideration to Dr. Heinkel's statement that Byrd had a prior diagnosis of fibromyalgia because nothing in the record suggested Byrd met the criteria for such a diagnosis. R. 26. Based on this record, the ALJ has demonstrated that good cause existed to give little weight to Dr. Heinkel's testimony because the evidence supports a contrary finding. *See Kelly*, 401 F. App'x at 407-08 (ALJ properly gave less weight to treating physician's opinion where it was without support from other evidence of record and departed substantially from other evidence of record). Accordingly, the ALJ correctly applied legal standards in crediting Dr. Stephenson's testimony over Dr. Heinkel's.

## VI. CONCLUSION

Based on the foregoing, the court concludes that the ALJ's and Appeals Council's determination that Byrd is not disabled is supported by substantial evidence, and that the ALJ and Appeals Council applied proper legal standards in reaching their determinations. The Commissioner's final decision is **AFFIRMED**. A separate order in accordance with this memorandum of decision will be entered.

**DONE** the 11th day of December, 2017.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE